KENJI M. PRICE #10523
United States Attorney
District of Hawaii

KENNETH M. SORENSON
Chief, National Security
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  Ken.Sorenson@usdoj.gov

SCOTT A. CLAFFEE
STEPHEN MARZEN
Trial Attorneys
U.S. DOJ, National Security Division

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. 20-00083-DKW-RT |
| | ) | |
| v. | ) | GOVERNMENT'S MEMORANDUM |
| | ) | IN OPPOSITION TO DEFENDANT'S |
| ALEXANDER YUK CHING MA, | ) | MOTION TO RECONSIDER ORDER |
| | ) | OF DETENTION; ADDENDUM |
| Defendant. | ) | "A" (FILED UNDER SEAL); |
| | ) | DECLARATION OF KENNETH M. |
| | ) | SORENSON; CERTIFICATE OF |
| | ) | SERVICE |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................. i-ii

PROCEDURAL HISTORY ............................................................... 1

ARGUMENT .................................................................................. 2

I.     The Standard of Review .................................................. 3

      a.    Reconsideration Is Only Available In Extraordinary Cases ................. 3

      b.    Detention Is Required If No Conditions Would Assure Defendant's Appearance or the Safety of the Community ........................................ 4

II.    The Defendant's Proposed Conditions Are Woefully Inadequate to Assure His Appearance in Court and the Safety of the Community and Country ...... 4

      a.    Two of Ma's Proposed Sureties Present Substantial Concerns ............ 6

      b.    A Bond Secured by Money and Property Pledged by Ma's Family Members Will Not Assure His Appearance ......................................... 6

      c.    Home Confinement with Electronic Monitoring Will Neither Assure Ma's Appearance Nor Protect Our Nation's Secrets ............................ 8

III.   Ma Remains an Extreme Flight Risk and Serious Danger to the Community and Our National Security ............................................................. 10

CONCLUSION ................................................................................ 13

## TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*United States v. Forsyth*, No. 2:12-CR-00119-PMP, 2012 WL 3253195, at *3 (D. Nev. Aug. 7, 2012) .................................................................5-6

*Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877 (9th Cir. 2000).......................3

*Osborne v. U.S. Sec'y of Treasury*, 37 F. Supp. 2d 1176 (D. Haw. 1997)...............3

*United States v. Anderson*, 384 F. Supp. 2d 32 (D.D.C. 2005).............................7-8

*United States v. Bell*, No. SACR 08-00087-MMM, 2008 WL 11411709 (C.D. Cal. June 6, 2008).................................................................................9

*United States v. Brimager*, No. 13-CR-2381 JM, 2014 WL 6632787
    (S.D. Cal. Nov. 21, 2014) ................................................................8

*United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991)............................................4

*United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008) ................................................9

*United States v. Nicherie*, No. CR 04-354-TJH, 2004 WL 7331735
    (C.D. Cal. Apr. 21, 2004) ................................................................8

*United States v. Possino*, No. CR 13-00048-SVW-3, 2013 WL 1415108
    (C.D. Cal. Apr. 8, 2013) ..............................................................7, 9

*United States v. Sullivan*, No. CR 17-00104-JMS-KJM, 2020 WL 1482121
    (D. Haw. Feb. 12, 2020)................................................................3, 5

*United States v. Townsend*, 897 F. 2d 989 (9th Cir. 1990) ...................................7-8

*United States v. Velasquez*, No. CR-13-70280 MAG, 2013 WL 1195708
    (N.D. Cal. Mar. 22, 2013) ................................................................9

| Statutes | Page(s) |
|---|---|
| 18 U.S.C. §§ 794(a) and (c) | 1 |
| 18 U.S.C. § 3142 | 5 |
| 18 U.S.C. § 3142(e)(1) | 4 |
| 18 U.S.C. § 3142(f)(2) | 5 |
| 18 U.S.C. § 3142(f)(2)(B) | 4 |
| 18 U.S.C. § 3142(g) | 4 |

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION

The United States, through its attorney, Kenji M. Price, United States Attorney for the District of Hawaii, respectfully submits the following Memorandum of Law in opposition to Defendant's Motion to Reconsider Order of Detention (Dkt. No. 29). For all of the reasons set forth below, there is no combination of conditions that will reasonably assure Ma's presence at future proceedings or the safety of the community, including the new surety bond proffered by the defense; thus, Ma should be detained.

## PROCEDURAL HISTORY

Defendant Alexander Yuk Ching Ma (hereafter "Ma") was charged by criminal complaint on August 13, 2020 with conspiracy to gather and communicate national defense information of the United States to the People's Republic of China ("PRC"), in violation of Title 18, United States Code, Sections 794(a) and (c).  (Dkt. No. 1.)  On August 17, 2020, the Government moved to detain Ma without bail. (Dkt. No. 6.)  Following a hearing on August 27, 2020 before the Honorable Rom Trader, United States Magistrate Judge, this Court ordered Ma detained pending trial. (Dkt. No. 14.)

In its written order, the Court found that Ma "presents a serious risk of flight" and "a danger to the community and nation."  (Dkt. No. 16, at 3.)  The Court found that the weight of the evidence was "substantial, convincing and concerning," and noted that "defendant's ties to China, which include personal residences and bank

accounts which he failed to report to pretrial services to be of significant concern, particularly when coupled with the defendant's training as a CIA operator." (*Id.*)

Ma was indicted on September 30, 2020, on the same charge of conspiring to gather and communicate national defense information to the PRC. (Dkt. No. 18.) He was arraigned and pleaded not guilty to the charge on October 5, 2020. (Dkt. No. 22.) On October 29, 2020, Ma filed a Motion to Reconsider Order of Detention, an accompanying memorandum of law, and exhibits. (Dkt. No. 29.)

## ARGUMENT

This Court should not reconsider its prior order detaining Ma because Ma has not raised any newly discovered material facts or evidence that was not previously available. Ma's motion proposes a "new surety" in the form of cash and home equity posted by various relatives of Ma. He also proposes his sister, brother-in-law, and niece as third-party custodians, with home detention and electronic monitoring. These relatives and their offers to serve as custodians and post bond for him were available at the time of his original detention hearing; their homes and money are not in any way newly discovered.

Even if this Court were to reconsider its ruling, Ma's proposed conditions—the surety bond and home confinement—are still woefully inadequate to reasonably assure his appearance in court and the safety of the community and country. A bond of money and property pledged by family members will not prevent a determined

2

defendant from fleeing, nor will electronic monitoring prevent an experienced spy from communicating secrets or arranging flight.  And nothing about the proposed conditions alter the statutory analysis that heavily favors detention in this case.

## I.     The Standard of Review

### a.     Reconsideration Is Only Available In Extraordinary Cases

Reconsideration of a prior court order "is 'an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources' and 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'"  *United States v. Sullivan*, No. CR 17-00104-JMS-KJM, 2020 WL 1482121, at *1 (D. Haw. Feb. 12, 2020) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). Therefore, "a motion for reconsideration requires a showing (1) of newly discovered evidence, (2) that the court committed clear error or the initial decision was manifestly unjust, (3) of an intervening change in controlling law, or (4) of other, highly unusual, circumstances warranting reconsideration."  *Id.  See also, Osborne v. U.S. Sec'y of Treasury*, 37 F. Supp. 2d 1176, 1180 (D. Haw. 1997); Local Rule 60.1 ("Motions for reconsideration are disfavored" and "may be brought only upon [grounds that include] [d]iscovery of new material facts not previously available[.]")

//

//

3

**b.    Detention Is Required If No Conditions Would Assure Defendant's Appearance or the Safety of the Community**

A defendant must be detained if a court finds that no combination of conditions will reasonably assure his presence at future proceedings or the safety of the community. *See* 18 U.S.C. § 3142(e)(1). The government need only prove a risk of flight by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). With respect to whether a defendant is a risk to the safety of the community, the burden of proof is clear and convincing evidence. *Id.  See* 18 U.S.C. § 3142(f)(2)(B). For both prongs, the factors a court must consider are the same: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

**II.    The Defendant's Proposed Conditions Are Woefully Inadequate to Assure His Appearance in Court and the Safety of the Community and Country**

As an initial matter, this Court should refuse to consider Ma's new arguments for release because they were available to him at the time of the original detention hearing. As Ma notes in his memorandum, he proposed at the first hearing that he be released to the custody of his sister and brother-in-law, along with a $10,000 cash bond. (Dkt. No. 29-1 at 1.) The only thing new in his proposal upon reconsideration is the addition of his niece as a custodian in addition to his sister and brother-in-law,

4

and the larger package of sureties he proposes to secure his appearance. Ma's niece lives with his sister and brother-in-law, a fact that was clearly known to Ma at the time of the detention hearing. It is unclear to the government what difference it makes that Ma is now proposing a third set of eyes on him in the same household. Furthermore, Ma makes no representations in his memorandum that the cash and mortgages he proposes as sureties were not available to him at the time of the hearing. That it took him a couple of months to convince his relatives to back him up is not an excuse for the delay, and his motion should be refused because he has not presented anything that could not have been raised earlier. *See Sullivan*, 2020 WL 1482121, at * 1.[1] But even if the Court considers Ma's proposal, his proffered conditions do not withstand scrutiny.

//

//

//

---

[1] Instead of reconsideration, this Court may decide to treat defendant's motion as request to reopen the detention hearing under the Bail Reform Act. However, that option is only available in cases where the Court "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance [of the defendant] and the safety of . . . the community." 18 U.S.C. § 3142(f)(2). *See United States v. Forsyth*, No. 2:12-CR-00119-PMP, 2012 WL 3253195, at *3 (D. Nev. Aug. 7, 2012) (citing Section 3142(f)(2) and noting that "[c]ourts have interpreted this provision strictly, holding that a detention hearing should not be reopened if the information was available at the time of the initial hearing."). As detailed herein, Ma's proposed "new" information was available at the original hearing, but also does not alter the analysis of the Section 3142 factors.

### a.      Two of Ma's Proposed Sureties Present Substantial Concerns

Ma proposes that he be released on a bond secured by a total of $1,060,000 in cash and mortgages, the entirety of which will be posted by his relatives:  $200,000 cash from his sister Irene Yee; $10,000 cash and $350,000 in home equity from his wife, Amy Ma; and $500,000 in home equity from his niece, Yvonne Lau.  (Dkt. No. 29-1, at 1-2.)  There are multiple problems with this package that counsel against this Court's acceptance of the proposal.

First, the Court should consider the fact that Amy Ma, who is pledging a total of $360,000 in cash and equity, was arguably knowledgeable of Ma's ties to Chinese intelligence agents.  She traveled to China in 2006 and delivered an encrypted laptop to Ma's MSS handlers.  (Dkt. No. 1 ¶¶ 47-48.)  Ma told the FBI undercover during a meeting that he at times provided information to Chinese intelligence by encrypting it on his laptop.

Additional concerns are set forth in a sealed addendum to this opposition.  (See Addendum A, filed under seal.)

### b.      A Bond Secured by Money and Property Pledged by Ma's Family Members Will Not Assure His Appearance

In general, money in and of itself does not guarantee the appearance of a released defendant who has significant motive and resources to flee from prosecution.  *See, e.g., Forsyth*, 2012 WL 3253195, at *4 (refusing to reopen detention hearing because defendant had not presented any new information and his

6

relatives' offer to post a cash bond was not sufficient to overcome substantial risk of flight); *United States v. Possino*, No. CR 13-00048-SVW-3, 2013 WL 1415108, at *6 (C.D. Cal. Apr. 8, 2013) (finding that a $500,000 secured bond pledged by defendant's parents and wife would not deter defendant from flight given likely lengthy prison sentence and collecting other cases from Ninth Circuit)

Second, a bond pledged by individuals associated with the defendant is not a reliable method of assuring a defendant's appearance.  Here, all of the individuals are family members, and for reasons set forth in our sealed addendum, present concerns. Helping Ma escape prosecution may be more important to these relatives than the money or property they have pledged.  As one court noted, "[I]t is not unreasonable to expect that someone's mother, even if she were confident that he would be likely to flee, might willingly post her own home as security to protect her son from a potentially lengthy prison term."  *United States v. Anderson*, 384 F. Supp. 2d 32, 42 (D.D.C. 2005) (denying defendant's motion for release where defendant was facing a potential prison term for the rest of his life and had a "unique ability to flee the jurisdiction and evade detection" by virtue of his connections overseas and his use of false identities, among other things).  *See also, United States v. Townsend*, 897 F. 2d 989, 996 (9th Cir. 1990) (affirming detention and noting that cash bond offers from sources with skeptical motives cannot overcome risk factors).

//

7

**c.    Home Confinement with Electronic Monitoring Will Neither Assure Ma's Appearance Nor Protect Our Nation's Secrets**

Ma also proposes that he live with his sister, brother-in-law, and niece in their home "under constant 24 hour home detention with electronic monitoring."  (Dkt. No. 29-1, at 2.)  This, too, is inadequate.  As the Ninth Circuit has stated, "[T]he wearing of an electronic device [does not] offer assurance against flight occurring before measures can be taken to prevent a detected departure from the jurisdiction." *Townsend*, 897 F. 2d at 995; *see also, Anderson*, 384 F. Supp. 2d at 41 ("Conventional electronic monitoring also would only apprise authorities of whether Mr. Anderson was in or out of his home, and would likewise give him ample lead time if he wished to flee."); *United States v. Nicherie*, No. CR 04-354-TJH, 2004 WL 7331735, at *9 (C.D. Cal. Apr. 21, 2004) (finding that defendant "poses such a serious risk of flight that neither the 'active' nor 'passive' [GPS] monitoring system would reasonably assure Defendant's continued appearance"); *United States v. Brimager*, No. 13-CR-2381 JM, 2014 WL 6632787, at *9–10 (S.D. Cal. Nov. 21, 2014) ("GPS monitors are not impossible to remove . . . [and the court] has no doubt that a highly trained, motivated, resourceful, and intelligent individual like Defendant would have little difficulty escaping under such conditions, and there does not appear to be sufficient motivation here to deter him from doing so.")

Not only does electronic monitoring not prevent a determined and motivated defendant from fleeing, it also cannot prevent a defendant from continuing to commit

crimes.  Ma's danger to the community at this point is that he still holds countless pieces of sensitive national security information in his head and could, at any time, communicate that information to a foreign adversary, or simply post it on the internet.  There is no way to guarantee that he would not do so from the confines of his niece's house.  *See, e.g., United States v. Hir*, 517 F.3d 1081, 1093 (9th Cir. 2008) (affirming detention and noting that it is especially difficult to craft conditions in criminal cases that "involve communications and that are therefore not readily susceptible to effective monitoring"); *Possino*, 2013 WL 1415108, at *6 (finding that confinement at defendant's mother's house would be insignificant because she and defendant's wife did not prevent his illegal activities in the past and there was no reason to believe they could prevent him from fleeing); *United States v. Bell*, No. SACR 08-00087-MMM, 2008 WL 11411709, at *4 (C.D. Cal. June 6, 2008) (rejecting supervision by defendant's mother in child exploitation case by recognizing that she would not be able to prevent defendant from accessing electronic devices); *United States v. Velasquez*, No. CR-13-70280 MAG, 2013 WL 1195708, at *3 (N.D. Cal. Mar. 22, 2013) ("Placing Defendant on house arrest and electronic monitoring will not prevent him from selling guns and drugs from his home.").

//

//

9

### III.   Ma Remains an Extreme Flight Risk and Serious Danger to the Community and Our National Security

Curiously, Ma makes no attempt to address why his proposed "new surety" would overcome the "significant concern" expressed by this Court when it ordered Ma detained, or how the bond package and custodial arrangement would mitigate his "serious risk of flight" and danger to the national security.  The factors meriting detention remain the same, and they remain substantial.

As the government showed at the original detention hearing, Ma is an extreme flight risk and no conditions short of confinement will both assure his appearance in court and prevent him from endangering our national security if he were to remain outside of federal custody.  Again, Ma is accused of systematically committing espionage violations by conspiring to provide highly sensitive, classified information to the PRC over many years of regular, clandestine meetings with members of China's intelligence services.  The consequences he faces for a violation of the Espionage Act are dire – a possible maximum sentence of life imprisonment.  There is significant risk that Ma would choose to take his chances in flight rather than face spending the rest of his life in prison if convicted.

The government has overwhelming evidence that Ma committed the crime of which he is accused.  As this Court has already found, the weight of the evidence is "substantial, convincing and concerning."  (Dkt. No. 16 at 3.)  Among the most concerning pieces of evidence is an hour long video of Ma and his principal co-

10

conspirator (both former CIA officers) providing highly damaging classified information—including CIA sources and methods, names of confidential human sources, and secret digraph information to decode and understand communications— to PRC intelligence officers while Ma counted out $50,000 in cash.  Ma admitted in a post-arrest interview with the FBI that the video accurately depicted communicating classified information to the Chinese.  In addition, the government possesses years of communications, phone conversations, and covert emails between Ma and his Chinese handlers, as well as evidence of Ma's ongoing attempts to access classified information that he could provide to the PRC during his FBI employment.  And of course, the government has Ma on tape confessing to an FBI undercover agent that he did almost all of these things.

Moreover, Ma has incentive and opportunity both to flee to China and/or to provide national security information to China or another adversary.  Ma was born in China, as were all of his proposed sureties and custodians save one (his niece).  Ma lived in the PRC before moving to Hawaii, he speaks multiple dialects of Chinese, and he still has family, including his in-laws and his own adult daughter, in the PRC. He has had and may still have bank accounts in the PRC, and he and his wife own property there.  Ma has traveled extensively to China and throughout the Pacific region over the years.  The foreign intelligence service with whom Ma is accused of conspiring has every reason to help him escape, and Ma has special skills and

11

tradecraft that he acquired while working for the world's preeminent intelligence service that give him a unique ability to circumvent confinement conditions.

Finally, Ma's conduct, including recent statements he made to an FBI undercover officer, demonstrates that he remains ready, willing, and able to continue to betray our Nation's secrets while at large and would have an increased incentive to ingratiate himself with a foreign intelligence service in order to make good his escape. Ma and his co-conspirator had access to an expansive amount of classified information, and Ma's lengthy conduct as a spy for China demonstrates a willingness to communicate what he knows to foreign intelligence officials in exchange for money. Even assuming Ma no longer has access to any documents, the Government does not know with certainty what information he has in his head about sensitive government programs, operations, employees or sources. What is known is that Ma has a strong incentive to leave the jurisdiction, he has value to foreign adversaries, and he has shown no loyalty to the United States. There is ample reason to believe that, when facing such a serious charge and severe potential penalties, Ma would choose to commit further acts of espionage in exchange for assistance from a foreign adversary, once again putting at risk the secrets of U.S. intelligence agencies and the lives of its personnel and assets.

Ma should remain detained.

//

## CONCLUSION

The Government respectfully requests that this Court deny Ma's motion for reconsideration of its carefully reasoned and correct ruling that ordered Ma detained pending trial.  Ma's detention is the only way to reasonably assure his appearance as required and the safety of others, including the United States at large due to the national security risk he presents if released.  Ma's proposed conditions would do nothing to alter that calculus and his motion should be denied.

DATED:  November 10, 2020, at Honolulu, Hawaii.

KENJI M. PRICE
United States Attorney
District of Hawaii

*/s/ Kenneth M. Sorenson*
By_____
KENNETH M. SORENSON
Assistant United States Attorney

SCOTT A. CLAFFEE
STEPHEN MARZEN
Trial Attorneys
U.S. Department of Justice
National Security Division

13

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served Electronically through CM/ECF:

Birney Bervar, Esq.

Attorney for Defendant
ALEXANDER YUK CHING MA

DATED:  November 10, 2020, at Honolulu, Hawaii.

*/s/ Dawn Aihara*

_____