ORIGINAL

CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

KENNETH M. SORENSON
CRAIG S. NOLAN
Assistant U.S. Attorneys
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii    96850
Telephone:   (808) 541-2850
Facsimile:   (808) 541-2958
Email:       Ken.Sorenson@usdoj.gov
             Craig.Nolan@usdoj.gov

SCOTT A. CLAFFEE
Trial Attorney
Counterintelligence and Export Control Section
National Security Division
United States Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 24 2024

at ___ o'clock and ___ min. ___ M
Lucy H. Carrillo, Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 20-00083 DKW |
| | ) |
| Plaintiff, | ) MEMORANDUM OF PLEA |
| | ) AGREEMENT |
| vs. | ) |
| | ) DATE:     May 24, 2024 |
| ALEXANDER YUK CHING MA, | ) TIME:     10:15 a.m. |
| | ) JUDGE:   Hon. Derrick K. Watson |
| Defendant. | ) |
| | ) |
| | ) |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, ALEXANDER YUK CHING MA, and

his attorneys, Salina Kanai, Esq., and Craig Jerome, Esq., have agreed upon the

following:

### THE CHARGES

1.      The defendant acknowledges that he has been charged in an

Indictment with conspiracy to commit espionage, in violation of Title 18, United

States Code, Sections 794(a) and 794(c).

2.      The defendant has read the charges against him contained in the

Indictment, and those charges have been fully explained to him by his attorneys.

3.      The defendant fully understands the nature and elements of the crime

with which he has been charged.

### THE AGREEMENT

4.      The defendant will enter a voluntary plea of guilty to the Indictment,

which charges him with conspiracy to gather and deliver national defense

information to aid a foreign government.    In return for the defendant's plea of

guilty to the Indictment, the government agrees not to charge the defendant with

2

additional offenses related to gathering, communicating and/or unlawfully retaining or possessing classified information.    The parties also agree that this agreement shall be pursuant to the provisions of Fed. R. Crim. P. 11(c)(1)(C), as set forth in Paragraph 10 of this Memorandum of Plea Agreement.

5.      The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.      The defendant enters this plea because he is in fact guilty of conspiring to gather and deliver national defense information to aid a foreign government as charged in Indictment, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.      The defendant understands that the penalties for the offense to which he is pleading guilty include:

a.      Imprisonment for any term of years, or for life, plus a term of supervised release of not more than five years.

b.      In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.    The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the

3

commencement of any portion of sentencing.   The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

## FACTUAL STIPULATIONS

8.   The defendant admits the following facts and agrees that they are not a complete recitation, but merely an outline of what happened in relation to the charge to which the defendant is pleading guilty:

a.   The defendant joined the Central Intelligence Agency ("CIA") in 1982.   In 1983, the defendant was assigned as a CIA officer overseas.   As a CIA officer, the defendant held a TOP SECRET security clearance and had access to classified U.S. national defense information.   In addition to his TOP SECRET clearance, the defendant had access to Sensitive Compartmented Information ("SCI").   This included access to information related to the identities of covert CIA officers; the identities of clandestine human sources; details of sensitive intelligence collection operations and methods; details of CIA clandestine training; cryptographic information related to CIA communications; and details of clandestine tradecraft the CIA employs to avoid detection by hostile foreign intelligence services.   As a CIA officer, the defendant was trained in methods of

4

covert communication, surveillance detection, and operational security, for purposes of conducting authorized intelligence activities for the United States. The defendant resigned from the CIA in 1989.

   b. While employed with the CIA, the defendant executed non-disclosure agreements instructing him of his ongoing obligation to maintain the secrecy of the information provided to him, even after his employment with the CIA terminated.

   c. Co-conspirator #1 ("CC #1") was a naturalized United States citizen who resided in Los Angeles, California.   CC #1 was born in Shanghai, in the People's Republic of China ("PRC") and came to the United States in 1961. CC #1 is related by blood to the defendant and is now deceased.   CC #1 joined the CIA in 1967 and worked as an officer from 1971 to 1982.   For multiple years during CC #1's CIA employment, CC #1 was assigned overseas to assignments in the Asian theatre.   As a CIA officer, CC #1 held a TOP SECRET security clearance and had access to U.S. classified national defense information.   This included access to the identities of covert CIA officers; the identities of clandestine human sources; details of sensitive intelligence collection operations and methods; details of CIA clandestine training; cryptographic information related to CIA communications; and details of clandestine tradecraft the CIA employs to avoid

detection by hostile foreign intelligence services.   As a CIA officer, CC #1 was trained in methods of covert communication, surveillance detection, and operational security, for purposes of conducting authorized intelligence activities for the United States.   In 1983, CC #1 resigned from the CIA.   After ending employment with the CIA, CC #1 resided in Los Angeles, California.

d.    At some time prior to March 2001, intelligence officers ("IOs") employed by the PRC's Shanghai State Security Bureau ("SSSB") contacted the defendant and asked him to arrange a meeting between CC #1 and SSSB IOs. The SSSB is a division of the PRC's Ministry of State Security ("MSS"), the PRC's civilian intelligence agency responsible for counterintelligence and foreign intelligence, as well as political security.   The defendant knew that CC #1 had been a CIA case officer stationed in a location of critical interest to SSSB, and that he would know and recollect intelligence information that would be of high value to MSS IOs.   Acting on the SSSB IOs' request, the defendant succeeded in convincing CC #1 to meet with the SSSB IOs.   The meetings occurred in a Hong Kong hotel room during a three-day period spanning from March 24 through March 26, 2001.

e.    During the three days of meetings, CC #1 provided the SSSB IOs with U.S. national defense information, including a large volume of classified

6

and sensitive information.   The defendant was present during all three days of the meetings, seated next to CC #1 at a small circular conference table.   The defendant fully understood and recognized that CC #1 was communicating U.S. classified national defense information to the SSSB IOs.   From time to time during the meetings, the defendant added and/or interjected information in order to assist CC #1 in providing U.S. classified national defense information to the SSSB IOs.

       f.     On or about March 26, 2001, the third day of the meetings, in return for the U.S. classified information provided, the SSSB IOs paid $50,000 in U.S. currency to CC #1.   The defendant counted the money while CC #1 signed a receipt indicating the acceptance of the funds.   At the close of the meeting on March 26, 2001, CC #1 and the defendant agreed to continue to assist the SSSB.

       g.     On or about March 21, 2003, the defendant applied for employment with the Federal Bureau of Investigation (FBI) as a contract linguist. The FBI, aware by this point of the defendant's ties with PRC IOs, made the determination to notionally hire the defendant to work at an FBI off-site location in Honolulu.   This ruse, part-time hiring was for the purpose of monitoring and investigating the defendant's activities and contacts with PRC IOs.   The

7

defendant began his contract employment with FBI in August of 2004 and was terminated from the position in October of 2012.

      h.    In or about February 2006, while the defendant was residing in Hawaii, the SSSB IOs sent the defendant five individual photographs depicting four individuals of interest to the SSSB IOs.   The SSSB IOs requested that the defendant contact CC #1 and ask CC #1 to provide the identities of the individuals. The defendant both emailed and called CC #1, and succeeded in convincing CC #1 to provide the identities of at least two (2) of the individuals.   The identities of these individuals were at the time, and remain, U.S. classified national defense information.

      i.    The defendant knowingly and willfully conspired with CC #1 and SSSB IOs to assist CC #1 in communicating and transmitting information that the defendant knew was to be used to the injury of the United States or to the advantage of a foreign nation.

9.    Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States
District Court for the District of Hawaii and Section 6B1.4 of the United States
Sentencing Guidelines ("USSG"), the parties stipulate to the following for the
purpose of the sentencing of the defendant in connection with this matter:

a.     Rule 11(c)(1)(C):   This Plea Agreement is entered into
pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which
authorizes the parties to agree that a specific sentence is an appropriate disposition
of the case.   The government and the defendant agree that the defendant shall
serve a period of imprisonment of ten (10) years.

b.     The defendant understands that pursuant to Rule 11(c)(3) of the
Federal Rules of Criminal Procedure, the Court may accept this Agreement, reject
it, or defer a decision until the Court has reviewed the presentence report.   If the
Court accepts the Plea Agreement, it will inform the defendant that the agreed
upon disposition of a sentence as set forth above will be included in the judgment.

c.     The parties agree that if the Court rejects the agreed upon
sentence, the defendant has the right to withdraw his plea of guilty pursuant to
Federal Rule of Criminal Procedure 11(c)(5)(B).   In addition, the parties agree
that if the Court rejects the agreed upon sentence, the United States shall have the

9

right to withdraw from the Plea Agreement.

   d. The parties agree that the provisions of USSG § 2M3.1 apply resulting in a Base Offense Level of 37 for conspiracy to gather or transmit Secret information.

   e. The parties agree pursuant to USSG § 3B1.3 that a two-level increase is appropriate for the defendant's abuse of a position of trust.

   f. The parties agree that the defendant qualifies for a mitigating role adjustment of two levels pursuant to USSG § 3B1.2.

   g. The parties agree that the defendant is eligible to receive an adjustment of two levels pursuant to U.S.S.G. § 4C1.1 if, pursuant to a presentence investigation conducted by the United States Probation Office ("USPO"), the defendant does not receive any criminal history points.

   h. As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.   If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.   *See* USSG § 3E1.1(a) and

Application Note 3.

   i.  The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for an additional one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if the defendant is otherwise eligible. The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the right (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

   11. The parties represent that as of the date of this agreement there are no material facts in dispute.

## **APPEAL/COLLATERAL REVIEW**

   12. The defendant is aware that he has the right to appeal his conviction and the sentence imposed. The defendant knowingly and voluntarily waives the

right to appeal his conviction, the lawful imposition of the agreed upon sentence,

and any lawful restitution order imposed, or the manner in which the sentence or

restitution order was determined, on any ground whatsoever, in exchange for the

concessions made by the prosecution in this Agreement.    The defendant

understands that this waiver includes the right to assert any and all legally waivable

claims.

        a.     The defendant also waives the right to challenge his conviction

or sentence or the manner in which it was determined in any collateral attack,

including, but not limited to, a motion brought under Title 28, United States Code,

Section 2255, except that the defendant may make such a challenge based on a

claim of ineffective assistance of counsel.

## **FINANCIAL DISCLOSURE**

    13.    In connection with the collection of restitution or other financial

obligations that may be imposed upon him, the defendant agrees as follows:

        a.     The defendant agrees to fully disclose all assets in which he has

any interest or over which he exercises control, directly or indirectly, including any

assets held by a spouse, nominee, or third party.    The defendant understands that

the United States Probation Office ("USPO") will conduct a presentence

investigation that will require the defendant to complete a comprehensive financial

statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under USSG § 3E1.1.

b.     The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a

13

period extending 90 days after the date of sentencing.   The defendant also

authorizes the United States Attorney's Office to inspect and copy all financial

documents and information held by the USPO.

      c.    Prior to sentencing, the defendant agrees to notify the Financial

Litigation Unit of the United States Attorney's Office before making any transfer

of an interest in property with a value exceeding $1,000 owned directly or

indirectly, individually or jointly, by the defendant, including any interest held or

owned under any name, including trusts, partnerships, and corporations.

### IMPOSITION OF SENTENCE

14.    The defendant understands that the District Court in imposing a

sentence will consider the provisions of the Sentencing Guidelines.   The

defendant agrees that there is no promise or guarantee of the applicability or non-

applicability of any Guideline or any portion thereof, notwithstanding any

representations or predictions from any source.

15.    The defendant understands that this Agreement will not be accepted or

rejected by the Court until there has been an opportunity by the Court to consider a

presentence report, unless the Court decides that a presentence report is

unnecessary.   The defendant understands that the Court will not accept an

agreement unless the Court determines that the charge to which the defendant

14

pleads guilty adequately reflects the seriousness of the actual offense behavior and

accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

16.     The defendant understands that by pleading guilty he surrenders

certain rights, including the following:

a.      If the defendant persisted in a plea of not guilty to the charges

against him, then he would have the right to a public and speedy trial.   The trial

could be either a jury trial or a trial by a judge sitting without a jury.   The

defendant has a right to a jury trial.   However, in order that the trial be conducted

by the judge sitting without a jury, the defendant, the prosecution, and the judge all

must agree that the trial be conducted by the judge without a jury.

b.      If the trial is a jury trial, the jury would be composed of twelve

laypersons selected at random.   The defendant and his attorney would have a say

in who the jurors would be by removing prospective jurors for cause where actual

bias or other disqualification is shown, or without cause by exercising peremptory

challenges.   The jury would have to agree unanimously before it could return a

verdict of either guilty or not guilty.   The jury would be instructed that the

defendant is presumed innocent, and that it could not convict him unless, after

hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

15

c.     If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.     At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant.   The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.   In turn, the defendant could present witnesses and other evidence on his own behalf.   If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.     At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

17.     The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

18.     If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes

16

a motion before the Court to withdraw his guilty plea and the Court grants that

motion, the defendant agrees that any admission of guilt that he makes by signing

this Agreement or that he makes while pleading guilty as set forth in this

Agreement may be used against him in a subsequent trial if the defendant later

proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives

any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure

and Rule 410 of the Federal Rules of Evidence regarding the use of statements

made in this Agreement or during the course of pleading guilty when the guilty

plea is later withdrawn.   The _only_ exception to this paragraph is an instance where

the defendant fully complies with this Agreement, but the Court nonetheless rejects

it.   Under those circumstances, the United States may not use those statements of

the defendant for any purpose.

19.    The defendant understands that the prosecution will apprise the Court

and the United States Probation Office of the nature, scope and extent of the

defendant's conduct regarding the charges against him, related matters, and any

matters in aggravation or mitigation relevant to the issues involved in sentencing.

20.    The defendant and his attorney acknowledge that, apart from any

written proffer agreements, if applicable, no threats, promises, agreements or

conditions have been entered into by the parties other than those set forth in this

17

Agreement, to induce the defendant to plead guilty.   Apart from any written

proffer agreements, if applicable, this Agreement supersedes all prior promises,

agreements, or conditions between the parties.

21.    To become effective, this Agreement must be signed by all signatories

listed below.

## SPECIAL PROVISIONS

22.    The defendant agrees to the following special conditions:

a.    <u>Continuing Non-Disclosure</u>.    The defendant acknowledges

that, in connection with his employment, he entered into certain agreements

prohibiting the unauthorized disclosure of classified information, confidential

information, and other information acquired as a part of the defendant's

performance of his official duties.   Even though the defendant is no longer a

government employee, the defendant acknowledges his continuing duties and

obligations under these agreements. As such, the defendant understands and agrees

that he has a continuing legal obligation to refrain from the unauthorized oral or

written disclosure of classified information, or information relating to the national

defense.   The defendant understands and agrees that the law forbids him from

disclosing, communicating, transmitting, or disseminating any classified

information, or information relating to the national defense, without regard to

18

where, when, or how he learned of or came into possession of the classified information or information relating to the national defense.   The defendant understands and agrees that merely because classified information, or information relating to the national defense, may have appeared publicly does not render that information unclassified.

        b.    <u>Pre-Publication Review</u>.   The defendant understands and acknowledges his legal obligation to refrain from the unauthorized oral or written disclosure of information derived from the United States government or derived from the activities described in the above Factual Stipulations.   Should the defendant at any time author or participate in the creation of any book, writing, article, film, documentary or other production, or otherwise provide information for purposes of publication or dissemination, including but not limited to information provided through interviews with freelance writers or representatives of any media organization or entity, the defendant hereby agrees first to submit in a timely fashion said book, writing, article, film, documentary, or information to the CIA or other relevant member of the United States Intelligence Community ("USIC") for timely pre-publication review and deletion of information which, in the discretion of the CIA or relevant USIC member should not be published or disseminated on the grounds of national security or on such other grounds as are

19

already the subject of the defendant's pre-existing agreements with the United States government.

      c.     <u>Commercial Benefits</u>.   At the time of acceptance of the instant plea offer, the defendant agrees to execute an assignment to the United States of any profits or proceeds that he may generate in connection with any publication or dissemination of information describing his work as an employee or contractor for the United States government, his espionage activities, or the facts and circumstances leading to his arrest and conviction.   This assignment shall include all profits and proceeds defendant generates, regardless of whether such profits and proceeds are payable to himself or to others directly or indirectly.   The assignment is attached and hereby incorporated in this agreement.

      d.     <u>Foreign Government Contacts</u>.   The defendant shall have no contact with any foreign government intelligence services or agents thereof, and shall not seek or accept, personally or through another person or entity, any benefit from such government intelligence services or agents thereof, and should such a benefit be received by the defendant or any current or future member of his family, or some other person or entity on his behalf or the behalf of such family members, he agrees to notify the FBI of such benefit, and he hereby assigns any right he has in such a benefit to the United States.

20

e.     <u>Media Contacts</u>.   The defendant agrees to notify the FBI immediately of any contacts he intends to have with any media, so that representatives of the intelligence community may be present to monitor the information being disseminated, and, if necessary, to prevent the unauthorized disclosure of information.   Such contacts include, but are not limited to, contacts in person, by electronic means, by telephone, or by public or private mail carrier. Among other things, this provision covers contacts relating to any media interview, and contacts with any individual where the subject of the contact involves the publication of any book, article, scripts or other work relating to the defendant's espionage activities or employment with the United States government or work as a United States government contractor.

f.     <u>Conditions of Incarceration</u>.   The defendant is aware of the provisions of 28 C.F.R. § 501.2 governing conditions of incarceration in national security cases and acknowledges that the United States reserves the right to exercise these provisions.

g.     <u>Waiver of Discovery</u>:   As part of this plea agreement, and based upon the concessions of the United States herein, the defendant knowingly, willingly, and voluntarily gives up the right to seek any additional discovery.

21

Further, the defendant knowingly, willingly, and voluntarily waives all pending requests for discovery.

## **COOPERATION**

23.    The defendant agrees to cooperate as follows:

a.    The defendant agrees to be debriefed by the United States and provide complete and truthful answers to any questions posed to him regarding the events and circumstances that led to his arrest and/or conviction in the instant matter, and any other inquiry the United States Government through its representatives deems relevant to his conduct.

b.    The defendant agrees to submit to as many debriefing sessions and with as many United States government agencies as necessary to fully cover the above-listed areas of inquiry.  The timing and location of such debriefings and meetings shall be determined by the United States.  To avoid disruptions and possible compromises during the initial debriefing period, the defendant agrees to refrain from providing interviews or otherwise discussing his conduct with anyone else other than as described in this paragraph and with his defense team, until after his sentencing, without specific approval from the United States.

c.    The defendant agrees that, upon request by the United States, the defendant will voluntarily submit to polygraph examinations to be conducted

22

by a polygraph examiner of the United States' choice.  The defendant stipulates to the admissibility of the results of polygraph examinations if later offered in a proceeding to determine the defendant's compliance with this plea agreement.

        d.     The defendant agrees to provide all documents, records, writings, or materials of any kind in the defendant's possession or under the defendant's care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

        e.     The defendant agrees that the Factual Stipulations set forth in Paragraph 8 of this agreement only include information necessary to support the defendant's guilty plea.   The defendant will provide more detailed facts relating to this case during debriefings with Government representatives.

        f.     The defendant agrees to submit to a psychological assessment, if required by the United States Government.

        g.     The defendant is hereby on notice that the defendant may not violate any federal, state, or local criminal law while cooperating with the government, and that the government will, in its discretion, consider any such violation in evaluating whether a downward departure is appropriate.

h.    The defendant understands and agrees that his cooperation obligation represents a lifetime commitment by the defendant to the United States to cooperate as described in this agreement.

i.    The defendant agrees to testify truthfully and completely at any grand juries, trials or other proceedings.

j.    The United States agrees not to use any truthful statements the defendant makes during interviews pursuant to this agreement against the defendant in the government's case-in-chief at trial against the defendant in any other criminal prosecutions against the defendant, or at sentencing, except as provided below.  The government may use any statements made by the defendant to cross-examine the defendant, impeach the defendant, and to rebut any evidence or arguments the defendant offers in any proceeding.  Regardless of any other provisions of this agreement, however, the United States may use any statement made by the defendant, whether in the form of the Factual Stipulations within this plea agreement or in the debriefing of the defendant in some other form, against the defendant in any prosecution of the defendant resulting from the defendant's breach of the plea agreement, whether such breach is caused by the defendant providing false information, failing to provide full and complete cooperation, or for any other reason.  Such a prosecution includes, but is not limited to, a

24

prosecution for making false or perjurious statements or for the defendant's espionage-related activities.  The government may make derivative use of and may pursue any investigative leads suggested by any statements or other information provided by the defendant, and the government may use the derivative evidence against the defendant in any manner.

      k.     The defendant understands that the government's concessions in this plea agreement, specifically including the Rule 11(c)(1)(C) provisions of Paragraph 10, are conditioned upon his agreement to cooperate as set forth herein.   Any breach of this provision may serve as a basis for the United States to withdraw from this agreement.

//

//

//

//

//

//

//

//

24.     Should the Court refuse to accept this Agreement, it is null and void

and neither party shall be bound thereto.

DATED:   Honolulu, Hawaii, _____ May 24, 2024 _____.


AGREED:

CLARE E. CONNORS
United States Attorney
District of Hawaii


_____
KENNETH M. SORENSON
CRAIG NOLAN
Assistant U.S. Attorneys

_____
SCOTT A. CLAFFEE
Trial Attorney
Counterintelligence and Export
Control Section
National Security Division
United States Department of Justice

_____
SALINA KANAI
Attorney for Defendant

_____
ALEXANDER YUK CHING MA
Defendant

26